UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                              No. 2:23-cr-20004

LEVI WHITE and ZACKARY KING                                                              DEFENDANTS

**OPINION AND ORDER**

Before the Court are Defendants' motions (Docs. 36,[1] 40) to sever their trials. The Government has responded (Doc. 44) in opposition. For the reasons stated below, the motions will be DENIED.

I.  **Introduction**

Defendants were indicted on January 11, 2023, for deprivation of rights under color of law in violation of 18 U.S.C. § 242. (Doc. 1). The indictment alleges that Defendants, "while arresting R.W. with [another officer, whom the Court will call Officer A,] struck R.W. multiple times while R.W. was lying on the ground." *Id.* at 2. At the time, Defendants were deputies with the Crawford County Sheriff's Office.

According to the Government, Defendants and Officer A approached R.W. to discuss a crime of which R.W. was suspected. Although initially cooperative, R.W. "became agitated and lunged at defendant White, tackling him to the ground." (Doc. 44, p. 2). Defendants were quickly able to subdue R.W. by pinning him to the ground. White knelt on R.W.'s upper body, King controlled R.W.'s legs, and Officer A held R.W.'s midsection.

After R.W. was subdued on the ground, the Government alleges Defendants used excessive force on R.W. Specifically, the Government claims that

---

[1] Doc. 36 amends and supersedes Doc. 35, which was also styled as a motion to sever.

1

>  defendant White punched R.W. approximately nine times in the head or neck, then lifted R.W.'s head and slammed it into the pavement. At approximately the same time, defendant King kneed R.W. multiple times in the legs, then stood up, walked around behind R.W., kicked him in the back, and punched him in the midsection.

(Doc. 44, p. 3). A bystander filmed the incident. When Defendants noticed they were being filmed, the Government alleges that they "yelled profanely at the bystander, who stopped filming and drove away." *Id.* Both Defendants filed reports after the incident, with both reports allegedly failing to mention that White had slammed R.W.'s head in the ground and that King had kicked R.W.'s back and punched R.W.'s stomach.

According to the Government, White spoke to another member of law enforcement ("Officer B") about the incident shortly after it occurred. Officer B recalls White stating that R.W. had been shown "the Crawford way." Officer B is no longer sure whether White said that "*he* showed R.W. the Crawford way" or that "*we* showed R.W. the Crawford way." Officer B took this to mean that R.W. had been "tuned up" during the arrest. (Doc. 44, p. 3).

The Government also claims that Officer A texted White's personal cell phone to advise White that, while Officer A's dash-mounted camera had recorded some of Defendants' interactions with R.W., "the hood of my vehicle is blocking most of the a[**] whipping." (Doc. 44, p. 4). Allegedly, White did not respond to the message or contest Officer A's characterization of the altercation, later deleting Officer A's message.

White also allegedly texted a colleague ("Deputy C") that after R.W. tackled him, "[t]hen I took the fight to him. I'll fight back with someone trying to do that stupid s[***] every time, I don't care." (Doc. 44, p. 4).

Finally, the Government alleges that White deleted all of the data on his work-issued phone shortly before law enforcement arrived to retrieve the phone.

2

The Government also claims to have video footage of a "separate, uncharged incident, in which a doorbell camera captured defendant King using force on a woman." (Doc. 44, p. 7). It is unclear whether the Government intends to use that footage as evidence in this case.

## II.     Standard

Rule 14 of the Federal Rules of Criminal Procedure allows a court to sever codefendants' trials to avoid prejudice to a party.[2]  Fed. R. Crim. P. 14(a).  Severance is generally disfavored, however: "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 524, 537 (1993).  Joint trials reduce the risk of inconsistent verdicts while being more efficient for victims, witnesses, and the courts. *See id.* Accordingly, "[a] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539, *accord. United States v. Sherman*, --- F.4th ---, 2023 WL 5600295, at *2 (8th Cir. 2023).

Here, Defendants claim that a joint trial would compromise their rights under the Confrontation Clause.  Each Defendant further claims that he would be prejudiced if certain evidence against his co-Defendant (namely, White's post-incident conduct and King's previous use of force) were introduced in a joint trial.  The Court will take these arguments in turn.

## III.    Confrontation Clause

Defendants argue that if they are unable to cross-examine each other, their rights under the Confrontation Clause of the Sixth Amendment will have been violated.  The Court does not believe that Defendants' situation poses a Confrontation Clause problem.

---

[2] Defendants do not appear to contest the propriety of the initial joinder.

3

White argues that if King's conduct is admitted into evidence and White cannot cross-examine King, White's right to confront his accuser will have been violated. However, "[t]he central function of this right is to protect individuals from the use of ex parte *statements* as evidence against them in a criminal trial," and "[t]he confrontation clause bars the admission of *testimonial statements* made by witnesses outside of court." *United States v. Lee*, 374 F.3d 637, 644 (8th Cir. 2004) (emphasis added). The Court fails to see how the introduction of King's conduct would implicate a rule excluding statements.

King argues that White's texts and phone conversations would violate King's Confrontation Clause rights if admitted. At the outset, White's failure to challenge Officer A's characterization of events poses no Confrontation Clause problem; it is the *lack* of a statement. While White's exchanges with Officer B and Deputy C are statements, White's statements to Deputy C do not reference King, so they cannot be "evidence against" King for purposes of the confrontation clause. Additionally, the Confrontation Clause applies only to "*testimonial* statements." The Eighth Circuit has held that "casual statements to an acquaintance are not testimonial." *Lee*, 374 F.3d at 644. White's statements to Deputy C would fall within this category and therefore do not implicate the confrontation clause.

White's exchange with Officer B could also be characterized as "casual statements to an acquaintance" which are not testimonial. Even assuming that White's statements to Officer B were testimonial, the Supreme Court has held that a codefendant's confession does not violate the confrontation clause if it does "not refer directly to the defendant," makes only a "neutral reference to some 'other person,'" and the jury is instructed only to consider the statement against the confessing defendant. *Samia v. United States*, 599 U.S. 635, 647, 653 (2023). The sentence "We showed him the Crawford way," without specific mention of who "we" are, accordingly does not

4

violate the Confrontation Clause.  Finally, out of an abundance of caution, the Government has agreed to only give evidence of the "*he* showed him the Crawford way" version of the statement.  Given all of this, the Confrontation Clause does not prevent the evidence against White from being introduced in a joint trial with King.

For the foregoing reasons, the Confrontation Clause does not require severance here.

### IV.     Risk of Prejudice

Each Defendant also argues that the evidence against his co-Defendant will prejudice him and that the joint trial will impede the jury's ability to make individual determinations as to Defendants' guilt.  The Court disagrees.

In cases where some evidence is only admissible against some defendants, severance is not necessary where "the evidence [i]s sufficiently distinct that the jury, aided by the court's instructions, could compartmentalize the evidence against [the proper defendant] only." *United States v. Mason*, 982 F.2d 325, 327 (8th Cir. 1993).  "In assessing the jury's ability to compartmentalize the evidence against joint defendants, we consider the complexity of the case, whether any of the defendants were acquitted, and the adequacy of the jury instructions and admonitions to the jury." *United States v. Casteel*, 663 F.3d 1013, 1018 (8th Cir. 2011) (quoting *United States v. Lewis*, 557 F.3d 601, 610 (8th Cir. 2009)).  As the trial has not yet taken place, the Court cannot analyze the second *Casteel* factor.  However, the other two factors counsel against severance.

"When many defendants are tried together in a complex case and they have markedly different degrees of culpability, the risk of prejudice is heightened." *Zafiro*, 506 U.S. at 539.  But this is not such a case.  It involves only two defendants, each charged with the same single offense.  The elements of the offense are not especially intricate or nuanced, nor is the charged conduct

complex or difficult to comprehend. As for relative culpability, Defendants are charged with similar conduct and there is nothing in the record from which the Court can discern that they have "markedly different degrees of culpability." Because this case is not complex, however, any disparity in culpability would be minimally prejudicial under *Zafiro*. Accordingly, the first *Casteel* factor indicates that the jury can compartmentalize the evidence against each Defendant.

The third *Casteel* factor, the adequacy of jury instructions and admonitions, also counsels against severance. There is an "almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). Relying on this assumption, the Supreme Court allows a defendant's own un-Mirandized confession to be admitted for impeachment purposes as long as the jury is instructed not to consider it for its truth. *Samia*, 599 U.S. at 647. It allows one co-defendant to vilify another during a joint death-penalty hearing as long as the jury is instructed to only consider the conduct in mitigating the first defendant's culpability, not in aggravating the second defendant's. *Id.*; *see Kansas v. Carr*, 577 U.S. 108 (2016). And as stated above, it allows the use of co-defendant confessions which do not specifically identify the implicated defendants as long as an appropriate instruction is given. In short, in all but the most extreme circumstances, the law presumes that juries can compartmentalize their use of information that obviously bears on a defendant's guilt.

This presumption is just as strong here, where each Defendant seeks severance based on evidence which logically implicates only his co-defendant. The jury can and will be instructed that the evidence against each Defendant is to be considered only against that Defendant. Accordingly, there is no reason to doubt the jury's ability to compartmentalize the evidence against each Defendant.

Because the case is not complex and a jury will be able to compartmentalize the evidence against each Defendant, severance is not warranted based on prejudice.

V.   Conclusion

IT IS THEREFORE ORDERED that Defendants' motions to sever (Docs. 36, 40) are DENIED.

IT IS SO ORDERED this 10th day of October, 2023.

*/s/ P. K. Holmes, III*
P.K. HOLMES, III
U.S. DISTRICT JUDGE