**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-CR-20004-DGK |
| | ) | |
| LEVI WHITE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION IN LIMINE**

This case arises from an allegation that Defendant Levi White, a Crawford County deputy sheriff, used unreasonable force while effectuating the arrest of R.W. on August 21, 2022. The Government has charged Defendant with one count of Deprivation of Rights in violation of 18 U.S.C. § 242. Trial is set for May 6, 2024.

Now before the Court is Defendant's omnibus motion in limine seeking to exclude potential evidence. ECF No. 71. For the reasons stated below, the motion is GRANTED IN PART, DENIED IN PART, and the balance is TAKEN UNDER ADVISEMENT.

I.      **Rulings on general issues or uncontested matters.**

As a threshold matter, many of Defendant's requests must be denied because they are not addressed to specific evidence. "Motions in limine should be directed at specific evidence, not broad, vague categories of evidence or testimony." *See Linstrom v. Quiktrip Corp.*, No. 4:19-cv-00454-DGK, 2020 WL 6140553, at *1 (W.D. Mo. Oct. 19, 2020) (citing *Sappington v. Skyjack, Inc.*, No. 04-5076-CV-SW-FJG, 2008 WL 895222, at *7 (W.D. Mo. Mar. 27, 2008)). Hence, these requests are DENIED WITHOUT PREJUDICE. *See Kirk v. Schaeffler Grp. USA, Inc.*, No. 3:13-cv-5032-DGK, 2016 WL 740300, at * 4 (W.D. Mo. Feb. 24, 2016).

The following defense requests are not contested by the Government.

1.      **No 404(b) evidence.**  The Government states it is not seeking to introduce any 404(b) evidence in its case in chief, but may use such evidence in rebuttal, if warranted.

This part of the motion is GRANTED.

2.      **No extrinsic evidence.**  The Government agrees that both parties are precluded from introducing extrinsic evidence of character, not only Defendant's character, but also the character of R.W. and other potential Government witnesses.   The Court directs the parties to its ruling on the Government's motions in limine which discusses this issue in more detail.

Subject to this qualification, this portion of the motion is GRANTED.

3.      **Hearsay is generally not admissible.**   The Government agrees that hearsay evidence is not admissible unless it fits within a recognized exception.  The Court directs the parties to its ruling on the Government's motions in limine which discusses the general prohibition on Defendant introducing his own self-serving testimony.

Subject to this qualification, this portion of the motion is GRANTED.

4.      **Opinion evidence from a lay witness.**  Defendant seeks an order enjoining the Government from introducing any "speculative" evidence from a lay witness.

Defendant, however, has not identified any particular testimony he seeks to exclude, and the Court will not rule on abstract questions. *See Stillman v. Wal-mart Stores E. I, LP*, No. 4:19-cv-0222-DGK, 2020 WL 4430986, at *1 (W.D. Mo. July 31, 2020).

This portion of the motion is DENIED WITHOUT PREJUDICE.

5.      **Irrelevant and prejudicial information.**  Defendant notes that irrelevant and [unfairly] prejudicial information is not admissible, but he has not identified any particular testimony he seeks to exclude.

The Court will not rule on abstract questions.  *Id*.  This portion of the motion is DENIED WITHOUT PREJUDICE.

6.  **Certain testimony from Amber King Osborn.**  Defendant moves to exclude testimony from Amber King Osborn that "the Crawford County Sheriff's Office likes to rough people up," as well as testimony from Carol Wedding about statements unidentified officers allegedly made to R.W.

The Government states it does not intend to offer evidence of "rumors" about the Crawford County Sheriff's Office ("CCSO") from Ms. Osborn, nor does it intend to introduce testimony from Ms. Wedding about any statements from unnamed officers.  But it is unclear from the Government's response whether it intends to offer some other testimony about the CCSO through Ms. Osborn.

Erring on the side of caution, the Court directs the Government to approach the Court out of the jury's hearing before offering any evidence about the CCSO through Ms. Osborn.  This portion of the motion is TAKEN UNDER ADVISEMENT.

7.  **Videos of other arrests and incidents involving Zackary King.**  The Government states it does not plan to introduce any videos relating to incidents other than that charged in the indictment.  This portion of the motion is GRANTED.

8.  **Allegations or witnesses involved in any civil lawsuit against Defendant or Zackary King other than R.W.'s suit.**  The Government indicates that it does not plan to introduce any such evidence in its case in chief.  This portion of the motion is GRANTED.

9.  **Rumors, testimony, or other references to Defendant's involvement in Tammy Nelson's arrest.**  The Government indicates it does not plan to introduce any evidence relating to

Defendant's alleged assault on Ms. Nelson in its case in chief.  This portion of the motion is GRANTED.

**10.    Rumors, testimony, or other references to Defendant's involvement in Teddy Wallace's arrest**.  The Government indicates it does not plan to introduce any evidence relating to Defendant's alleged assault on Mr. Wallace in its case in chief.  This portion of the motion is GRANTED.

**11.    Rumors, testimony, or other references to Defendant's involvement in Robert Bowling's arrest.**  The Government indicates it does not plan to introduce any evidence relating to the arrest of Robert Bowling in its case in chief.  This portion of the motion is GRANTED.

**12.    Testimony and references to Defendant's involvement with Franklin County Sheriff Anthony Boen and the Justin Phillips incident.**  Defendant moves to exclude any rumors and testimony regarding Defendant's alleged involvement with Franklin County Sherriff Anthony Boen and the Justin Phillips incident, as irrelevant, speculation, hearsay, unfairly prejudicial, and extrinsic character evidence.

The Government responds that it does not plan to introduce any evidence relating to either Defendant's alleged role in the assault on Mr. Phillips or Defendant's connection to former Franklin County Sheriff Anthony Boen,[1] although it reserves the right to do so in rebuttal or on cross examination of defense witnesses.  The Government also states that it does not plan to introduce any evidence in its case in chief that the FBI interviewed Defendant during the Boen investigation, and Defendant was given a target letter for apparently violating 18 U.S.C. § 1001 by making false statements to the FBI.  The Government cautions that if Defendant testifies and

---

[1] Former Franklin County Sheriff Anthony Boen was convicted in 2021 of violating 18 U.S.C. § 242 for assaulting multiple pretrial detainees.

puts his truthfulness at issue, it may cross-examine him on this issue or present evidence of such on rebuttal.

        **II.      Rulings on Specific Evidence.**

        **1.      Opinion testimony from Erin Lipsmeyer and Marlee Helm.**  Defendant moves to exclude "[a]ny reference to the opinion testimony made by Erin Lipsmeyer in her statement to the Arkansas State Police and/or FBI as speculative and irrelevant, further she lacks the education, skill or training to provide the expert opinion testimony that she offered in that statement. Defendant makes a similar request with respect to "Marley Madison," apparently meaning a witness named Marlee Helm.  Ms. Lipsmeyer and Ms. Helm were allegedly eyewitnesses to the events in question.

        As a threshold matter, Defendant has not identified any specific testimony to exclude, and the Court will not rule on abstract questions.  *See Stillman v. Wal-mart Stores E. I, LP*, No. 4:19-cv-0222-DGK, 2020 WL 4430986, at *1 (W.D. Mo. July 31, 2020).

        Further, certain opinion evidence from a lay witness can be admissible in a case such as this one.  *See, e.g.*, *United States v. Umbach*, 708 F. App'x 533, 545 (11th Cir. 2017) (holding the Government properly asked an eyewitness in an excessive force case whether, based on the witness' observations at the time of victim's arrest, he had "seen anything that justified [defendant's] use of force" against the victim).

        This portion of the motion is DENIED WITHOUT PREJUDICE.

        **2.      Testimony from Ms. Osborn and Ms. Wedding regarding R.W.'s injuries and mental capacity.**  Defendant seeks to exclude opinion testimony made by Ms. Osborn and Ms. Wedding in their statements to the Arkansas State Police regarding the injuries sustained by R.W. and/or his mental capacity.  Defendant contends this testimony is "speculative, irrelevant, lacking

foundation, containing hearsay," and "lacks the education, skill or training to provide the expert opinion testimony that she offered in that statement."

The Government explains that Ms. Osborn is a bail bondsman who paid R.W.'s bond and interacted with him around noon on August 22, 2022, less than 24 hours after the event. It notes that at that time, Ms. Osborn observed R.W. communicate at the level of a young teenager and that he had visible injuries on his body, including knots on his head and a gash on his forehead, and one of his ears "was completely black an[d] blue." The Government contends her observations of R.W. are admissible lay witness testimony, as they are based on her personal knowledge and help establish a fact question before the jury in this case—whether Defendant inflicted bodily injury on R.W. Ms. Wedding's testimony is similar: She observed R.W. when she picked him up the day after the event and drove him to get medical treatment.

This portion of the motion is DENIED. The above testimony is admissible lay witness testimony. Testimony beyond such facts may not be admissible, so the Government should tread carefully here.

**3.    Defendant's text messages sent following the incident.** Defendant moves to exclude any text messages he sent "following the incident as irrelevant, lacking foundation, containing speculation, hearsay, present[ing] an incomplete record and are [sic] unfairly prejudicial."

These texts are admissible as party admissions when offered by the Government. They are also very relevant and their probative value is not outweighed by the danger of unfair prejudice. This portion of the motion is DENIED.

**4.    Text messages, testimony, or references to text message statements from officers not involved in the incident.** Defendant argues that since those officers were not at the scene, they have no personal knowledge of any of the facts in this case and as such those text messages contain

speculation, hearsay, lack foundation, would create undue jury confusion, are unfairly prejudicial and irrelevant.

The Court agrees with the Government that although text messages from officers other than Defendant are likely inadmissible in many circumstances, some may be offered as prior consistent statements if an officer's credibility is attacked or for a non-hearsay purpose, such as to show the response (or lack thereof) from the defendant. For example, Officer Riddle texted Defendant on the day of the assault that the R.W. incident was an "ass beating," and Defendant did not dispute that characterization. The text message would thus be admissible as evidence of Defendant's consciousness of guilt. Additionally, if Defendant attacked Officer Riddle's credibility and suggested that he had a motive to shape his testimony against Defendant, the text message would be admissible to show Officer Riddle's prior consistent statement under Rule 801(d)(1)(B). Similar analysis may apply to other messages.

Defendant's request for a ruling excluding *all* such messages and testimony is DENIED.

5.     **Audio statements on the cell phone video taken by Erin Lipsmeyer.** Defendant moves to exclude all audio statements contained on the cell phone video taken by Erin Lipsmeyer, arguing they are hearsay, unfairly prejudicial, speculative, and "present an incomplete record."

The Government contends the audio track to the video is relevant to understanding the circumstances of Defendant's assault, including what threat, if any, Defendant perceived and Defendant's state of mind, both of which are relevant to whether Defendant acted willfully. The Government contends the audio will assist because it accurately captures the circumstances that existed at the time of the assault and Defendant's response. For example, the audio demonstrates that R.W. was not yelling or threatening officers during the assault, and that Defendant's fellow officers did not warn Defendant of any threats, such as seeing R.W. with a weapon, that would

justify the force Defendant used. The Government also contends the audio evidences Defendant's state of mind; it rebuts Defendant's stated defenses—and his expert testimony—that his force was justified and that he was acting with diminished mental capacity and a lack of impulse control at the time. The audio captures that when Ms. Helm got out of Ms. Lipsmeyer's car and yelled at the officers to "stop" beating R.W., Defendant immediately looked up, stopped hitting R.W. in the head, and yelled profanely at her. Hence, the audio shows (1) Defendant was capable of processing information and quickly conforming his actions to new stimuli; and (2) Defendant was aware that his assault was unjustified, as he stopped beating R.W. as soon as he realized bystanders were watching.

The Government argues the statements captured on Ms. Lipsmeyer's video are not "hearsay" because they are not being offered for the truth of the matter asserted. Rather, they will be offered to show the lack of threat faced by the officers and to explain the sequence of the Defendant's actions, as described above, which demonstrate Defendant's mental capacity and consciousness of guilt.

Finally, the Government contends the statements are not unfairly prejudicial, because they accurately capture what was said during the incident, including Defendant's own words.

Neither party has provided the video, with audio, for the Court's review. While it is likely at least some portions of the audio will be admissible, the Court cannot issue a definitive ruling without first reviewing the audio. This portion of the motion in limine is TAKEN UNDER ADVISEMENT.

**6.** **Testimony by Alma Police Department Officer Steve Hutchinson about Defendant referring to the "Crawford way."** Defendant seeks to exclude testimony from Officer Hutchinson that, during a telephone call on the day of the incident, Defendant told him that he had

shown R.W. "the Crawford way." Officer Hutchinson understood this comment as Defendant bragging about assaulting R.W. Defendant contends this testimony is irrelevant, unfairly prejudicial, hearsay, and impermissible extrinsic character evidence.

This evidence is admissible as a statement of a party opponent under FRE 801(d)(2), is highly relevant, and is not unfairly prejudicial. Defendant's motion is DENIED.

**7.     Reference to, or statements made by, Officers King or White to any law enforcement officer without *Miranda* or *Garrity* warnings being given.** Defendant moves to exclude all statements Defendant or Officer King made that were not accompanied by *Miranda* or *Garrity*[2] warnings.

The Government responds that it is not aware of Defendant ever being interviewed about the R.W. incident in a custodial setting. The Government asserts that all of Defendant's statements it plans to introduce at trial—statements made to fellow officers, friends, and bystanders in hallways, parking lots, over the phone, and via text—are non-custodial so *Miranda* does not apply to them. Similarly, with respect to *Garrity*, the Government reports that the Justice Department used a filter team to review and screen out any potential *Garrity* statements before those materials were reviewed by the trial team. The Government avers that its trial team did not review—and does not plan to introduce at trial—any statements made by Defendant that were part of an internal investigation or are otherwise subject to *Garrity* protections.

This portion of the motion is DENIED because Defendant has not identified any statement that would be subject to either *Miranda* or *Garrity*.

---

[2] In *Garrity v. New Jersey*, 385 U.S. 493 (1967), the Supreme Court held that the Fifth and Fourteenth Amendment protection against self-incrimination applies to statements given by public employees that are compelled as part of internal workplace misconduct investigations. A statement is considered "compelled" for *Garrity* purposes where an employee is required to give the statement under threat of termination or other serious adverse employment action.

**8.      Testimony or reference to Defendant's phone having been factory reset.**  Defendant moves to exclude evidence that he factory reset his cellphone as "speculative, irrelevant, hearsay and unfairly prejudicial," arguing it is common practice for officers to factory reset county phones upon turning those over to the Sheriff's Office.

Defendant contends that when he received the county iPhone it was a used, factory reset iPhone which required him to register his personal iCloud account to use it. He claims he asked the county how to set it up and they advised him to use his personal iCloud account.  Defendant claims he factory reset the iPhone upon surrendering it to the county because his personal iCloud account had his personal information, credit cards, personal contacts, and e-mails, etc.  He notes factory resetting the iPhone did not delete the information from his iCloud account, which the Government subpoenaed and received all information.  Defendant argues the Government simply wants to imply that factory resetting the phone was "some sort of nefarious conduct."

The Government responds that it expects the evidence at trial to show that after the FBI publicly announced an investigation into R.W.'s beating—and less than two hours before Crawford County officials arrived at Defendant's home to retrieve his county-issued cell phone—Defendant performed a factory re-set that deleted all data on the phone.  The Government also disputes that it recovered all the relevant information that may have existed before Defendant erased it.  The Government argues Defendant's behavior is admissible and highly relevant as consciousness of guilt.  It notes courts regularly admit evidence that defendants erased, or attempted to erase, cell phone data as consciousness of guilt. *See, e.g.*, *United States v. Ash*, 2022 WL 16955057 (2d Cir. 2022) (upholding § 1519 conviction for defendant who went to an Apple store and factory re-set her phone after receiving a grand jury subpoena).

Defendant's arguments are unavailing.  His behavior in resetting the phone evidence is admissible as consciousness of guilt.  Defendant is free, of course, to offer admissible evidence (e.g., he could take the stand and testify as to why he re-set the phone) bolstering his view of the case.  This portion of the motion is DENIED.

**9.     Video, cellphone video, or other bystander footage of the incident.**  Defendant moves to exclude any video, cellphone video, or other bystander footage of the incident because it is "irrelevant, hearsay, speculative, and will confuse the jury."  The videos Defendant is referring to are a police car dash camera video and a cell phone video taken by Erin Lipsmeyer.  Defendant contends they should be excluded because each only shows part of the incident, and neither depicts the viewpoint or information known by Defendant at the time of the incident, which is the standard by which Defendant's use of force should be judged.  Defendant offers no legal authority to support this claim.

Although each video shows only part of the incident, each is still relevant and admissible. This portion of the motion is DENIED.

**10.     "[T]estimony or evidence from police officers not designated by the Government as expert regarding excessive force, force in general, training, tactics, and force continuum."**  Although Defendant has not identified any specific testimony or witnesses he seeks to exclude, he seems to be asking the Court to exclude all testimony regarding the CCSO that were in place in August 2022 on the grounds that it is irrelevant, speculative, unfairly prejudicial, goes to an ultimate issue in the case reserved for the jury, is hearsay, and constitutes [inadmissible] opinion testimony.  Defendant also contends it was not previously disclosed as required under Rule 16(a)(1)(G), and the time for doing so has expired.

This argument is unavailing.  As a threshold matter, the Court notes that pursuant to Rule 16(a)(1)(G) and the Court's scheduling order,[3] the Government designated two hybrid fact-expert witnesses who would offer expert opinions on use of force standards on February 22, 2022.  Thus, its disclosures were timely.[4]

The remaining officers who will be offering opinion evidence will be those who have personal knowledge of CCSO policies, practices, and training standards.  These officers—including some who were on the scene—will testify about how they were trained, what they personally observed during the incident, and whether Defendant's use of force was consistent with their training.  This testimony is permissible as personal knowledge about the CCSO use of force standards set forth in policy and training, all of which is relevant to whether Defendant acted willfully when allegedly using excessive force on R.W.

This portion of the motion is DENIED.

## Conclusion

For the foregoing reasons, the Government's motion in limine is GRANTED IN PART, DENIED IN PART, and the balance are TAKEN UNDER ADVISEMENT.

**IT IS SO ORDERED.**

Date:  April 15, 2024                                  /s/ Greg Kays
                                                      GREG KAYS, JUDGE
                                                      UNITED STATES DISTRICT COURT

---

[3] There is no copy of the disclosure or certificate of service in the docket evidencing the disclosure, but the Government asserted it made the disclosures on that date, and Defendant does not dispute this assertion.

[4] Ironically, it appears Defendant did not timely disclose his use of force expert.  The disclosure was due in February 2023, but Defendant did not make his disclosure until March 18, 2024.